UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECO DAIRY AUTOMATION, Inc., | 1:12-cv-01310 LJO SMS |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT (Doc. 89) |
| v. | |
| GLOBAL TECH SYSTEMS, Inc. and DOES 1-50, | |
| Defendants. | |

## I. INTRODUCTION

This litigation involves a contract dispute between Beco Dairy Inc. ("BECO") and Global Tech Systems, Inc. ("GTS") concerning the development and licensing of dairy technology.

## II. FACTUAL BACKGROUND

BECO is in the business of producing automated dairy technology. Fifth Amended Complaint ("FAC"), Doc. 81, ¶ 9. Around 1996, BECO conceived of developing an electronic "no moving parts" milk meter (the "Meter"). *Id.* at ¶ 10.

At some point prior to February 13, 2000, BECO began selling milk flow meters, as well as sensors that could detect the health of a dairy cow. *Id.* at ¶ 11. BECO had an employee, Monte Lininger ("Lininger") who was tasked with researching the no-moving parts milk meter concept. *Id.* at ¶ 12. Lininger advised BECO that such a system could be developed by adding a third metal ring to BECO's existing flow meter. *Id.* at ¶13.

BECO's marketing director, Bob Borchert ("Borchert"), met with Victor Viesca ("Viesca"), the owner of a company in Mexico that manufactured parts for BECO. *Id.* at ¶ 14. Viesca introduced

Borchert to Antonio Fematt ("Fematt"), a graduate student who had been working for Viesca, whom he thought could help develop the Meter. *Id.* Beginning in January 1997, Borchert began paying Fematt to work on the Meter. *Id.* at ¶ 14.

While at BECO, Fematt began development of a pulsation monitoring system ("Pulsation System"), a "head's up" stand-alone automatic take-off system ("Take-Off System") and software that integrated these systems ("Parlor Scan"). *Id.* at ¶ 36. Along with the Meter, these products made up a complete product line ("Product Line"). *Id.* Fematt also helped BECO develop a cow identification system ("Cow ID system") while he was their employee. *Id.* at ¶ 38.

In March 2000, Borchert, Brown, Viesca, and Fematt began working with patent attorney, Dan Meanie, to start a patent application for the Meter technology. *Id.* at ¶ 67. Two patent applications were filed on February 13, 2001 for products related to the Meter. *Id.* These applications matured into four U.S. patents. *Id.* Later, Meanie filed patent applications on the Pulsation System, which would also mature into four patents. *Id.*

On February 20, 2001 Borchert, Brown, Viesca and Fematt founded Defendant GTS, a New Mexico-based corporation. *Id.* at ¶ 29. Fematt acted as the president of GTS, though he did not become a GTS employee until December 2007. *Id.* at ¶ 31. In May 2001, Fematt moved back to California to work more closely with BECO. *Id.* at ¶ 33. BECO hired Fematt, and, in October 2001, sponsored his H1B visa. *Id.* at ¶ 34.

In May 2005, BECO and GTS entered into an agreement regarding the Product Line. *Id.* at ¶ 47. Under the terms of this agreement, GTS possesses all rights to the Product Line and BECO has exclusive marketing rights to it in the continental US, Canada, Saudi Arabia and Japan. Product Line Agreement, FAC Ex. E. This agreement also describes that while GTS has obtained patent coverage for components of the Product Line, "the companies agree to decide jointly if any action will be taken on companies that infringe on the patents." *Id.*

Plaintiff asserts that at the time it filed its action, the Cow ID system was not completed and

there were serious issues with the Meter. *Id.* at ¶¶ 51-52. As time progressed, the parties' relationship disintegrated. Plaintiff alleges that Defendant failed to supply it with components for the Cow ID system and Product Line and failed to remedy defects discovered in 2009 and 2011, causing BECO to lose sales. *Id.* at ¶¶ 53-62. Plaintiff alleges that in 2013, Defendant began reaching out to Plaintiff's customers to sell them Cow ID and Product Line technology directly. *Id.* at ¶ 64. Ultimately, GTS refused to provide Plaintiff with the products at all. *Id.* at ¶ 66.

### III. PROCEDURAL HISTORY

This litigation was initiated by BECO in Kings County Superior Court on July 10, 2012. BECO alleged breach of contract, fraud, and interference, and requested declaratory relief of its contractual rights related to its use of certain dairy automation products and technology. GTS removed this action to this Court. On August 17, 2012, GTS responded to the Complaint with a Motion to Dismiss for Failure to State a Claim and Motion to Strike; BECO was granted leave to amend its Complaint to make its fraud claims more specific. On September 27, 2012, BECO filed its first amended complaint GTS answered and counterclaimed against BECO, alleging breach of contract, interference, and misappropriation of intellectual property, and requesting declaratory relief, related to the same dairy automation products and technology. On March 11, 2013, BECO filed for stipulated leave to amend its Complaint to remove claims for breach of a joint venture and leave was granted on March 25, 2013.

Before BECO filed its amended Complaint, GTS filed for bankruptcy, and on April 23, 2013, an automatic stay issued. On October 28, 2013, the bankruptcy proceeding was dismissed. In accordance with the earlier order granting leave to amend, BECO filed its Second Amended Complaint (removing claims for joint venture breach) on November 12, 2013. GTS answered and counterclaimed on November 27, 2013. GTS Answer and Counterclaim ("GTS Counterclaim"), Doc. 16.

On October 17, 2013 (before the dismissal for the bankruptcy was entered), GTS filed a Complaint in the United States District Court for the District of New Mexico against BECO, *Global Tech Systems, Inc., v. Beco Dairy Automation, et al*. Case No. 1:13-cv-01006-JAP-KBM ("GTS

Complaint"). While the GTS Complaint and Counterclaim were similar, the GTS Complaint included new claims that BECO infringed on eight patents GTS held. In response to the GTS Complaint, on November 12, 2013, BECO filed its answer and a Motion to Dismiss or Transfer. Ultimately, the New Mexico Court transferred the case to the Eastern District of California, where it was renumbered as 1:14-cv-00865----SKO ("Case 865"). Shortly thereafter, BECO petitioned to consolidate this (above-captioned) case with Case 865 and requested leave to amend its own Complaint. On December 9, 2014, the Court consolidated the matters into this case. Consolidation Order, Doc 57. The Court granted BECO leave to amend and closed Case 865.

BECO filed its third amended complaint ("TAC") December 18, 2014. Doc. 59. The TAC added an additional interference claim and seven claims related to the ownership and validity of the patents at issue in the GTS Complaint. *Id.* GTS moved to dismiss six of BECO's seven patent claims. Doc. 60. The Court granted this motion in part, and dismissed several of Plaintiff's causes of action, granting Plaintiff leave to amend most of the dismissed claims. Doc. 64 at 16-17. BECO filed its fourth amended complaint, which included four causes of action sounding in patent law. Doc. 65. GTS moved to dismiss BECO's two of these claims. Doc. 67. The Court granted Defendant's motion, allowing Plaintiff opportunity to amend its claims that challenged inventorship and its claims that patents at issue are unenforceable due to their misuse. Mem. Decision and Order ("May 2015 Order"), Doc. 80. The Order denied Plaintiff leave to amend its claim that the patents are unenforceable due to inequitable conduct. *Id.*

BECO timely filed the FAC on May 22, 2015. On June 12, 2015 GTS moved to dismiss the inventorship claims presented in Plaintiff's tenth cause of action, pursuant to pursuant to Rule 12(b)(6) and 12(b)(1). MTD, Doc. 89. After receiving Plaintiff's Opposition, Doc. 91, and Defendant's Reply, Doc. 92, the Court vacated the hearing date pursuant to Local Rule 230(g).

\\

\\

## IV. STANDARD OF DECISION

**A.     12(b)(6) Legal Standard**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550

5

U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.     12(b)(1) Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for "lack of subject-matter jurisdiction." Faced with a Rule 12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981).

A challenge to subject matter jurisdiction may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). As explained in *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004):

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan, 719 F.Supp.* 899, 903 (E.D.Cal.1989), *rev'd on other grounds*, 963 F.2d 229 (9th Cir.1992). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*; *see also Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052 n. 2 (9th Cir.2009), *rev'd on other grounds en banc*, 616 F.3d 1019 (9th Cir.2010) (applying *Ashcroft v. Iqbal*, 556 U.S. 662,

6

(2009), to a facial motion to dismiss for lack of subject matter jurisdiction).

## V. ANALYSIS

**A.     Whether Plaintiff has Standing to Challenge Inventorship**

Plaintiff's tenth cause of action seeks a declaratory judgment stating that Lininger is a co-inventor of patents numbers 6,604,053 ("'053 Patent"), 6,722,208 ("'208 Patent"), 6,799,474 ("'474 Patent"), and 6,990,924 ("'924 Patent") and that Brown is a co-inventor of the '053 patent. FAC ¶ 182. Plaintiff also alleges that Brown is a co-inventor of the '053 patent, and that Borchert and Viesca are not co-inventors of any of the four patents. *Id.* at ¶¶ 181-209. These patents are all related to the Meter technology. *Id.* at ¶ 181.

Defendant argues Plaintiff does not have standing to challenge inventorship because it has not alleged an injury that would be redressed by the relief it seeks. MTD at 5. As discussed in the May 2015 Order, constitutional standing requires that a plaintiff has suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted).

Plaintiff argues that it has standing because Defendant has sued it for patent infringement and will reassert these claims in response to the underlying complaint. Opposition at 11. This logic supports Plaintiff's twelfth cause of action, which alleges that the patents are invalid. Plaintiff might not be liable for infringement if a patent is invalid. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) ("Invalidity is an affirmative defense that can preclude enforcement of a patent against otherwise infringing conduct.") (internal quotes omitted).

It does not, however, support Plaintiff's tenth cause of action. Plaintiff's desired outcome- the substitution of Lininger's and Brown's names on the patents would have the effect of saving the patents- *and* any infringement claims that Defendant will bring. Plaintiff explains that it has an additional interest

in preserving the validity of the patents because it is contractually entitled to a share of any royalties future infringement actions might bring. Opposition at 10; *see also* FAC Ex. E. As discussed in the May 2015 Order, Plaintiff does not allege the existence of any such action. The possibility of such an action is speculative. Therefore, so is any injury that would attach to profits from it. Such attenuated allegations cannot support standing.

**B.     Whether Plaintiff Has a Viable Claim Under 35 U.S.C. § 102(f) (2006)**

Plaintiff's invalidity claims arise in its twelfth cause of action. FAC ¶ 224 (alleging patents in suit are invalid pursuant to 35 U.S.C. §§ 102 and/or 103). Plaintiff, however, also alleges that the Meter patents are invalid under 35 U.S.C. § 102(f) in its general factual assertions, *id.* at ¶¶ 79-84, and as part of the inventorship claim brought in its tenth cause of action. *Id.* at ¶¶ 178-179. Defendant did not move to dismiss the twelfth of action, but it did move to dismiss the 102(f) claim as it arose under the tenth cause of action. As discussed above, Plaintiff's tenth cause of action has been dismissed for lack of standing. The Court, however, will address the 102(f) claim to the extent that it remains part of the twelfth cause of action.

Section 102 states that "a person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented . ." 35 U.S.C. § 102(f)(2006).[1] This section "makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998). The operation of Section 102(f) is mitigated by Section 256, which provides that:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

---

[1] In 2011, Congress amended the patent law to change Section 102 from a "first to invent" to a "first to file" system. Leahy-Smith America Invents Act ("AIA"), PL 112-29, 125 Stat 284 § 3 (2011) (codified as amended at 35 U.S.C. § 102). Because the patents-in-suit were issued before the AIA was implemented, pre-AIA section 102 applies. *Id.*

8

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C.A. § 256 (2006).[2]

Defendant argues that Plaintiff failed to allege facts that support a claim of invalidity under 35 U.S.C. § 102(f)(2006), because Plaintiff did not allege facts that would show that the error in inventorship was free of deceptive intent, as required by Section 256. MTD at 10. Plaintiff argues that a claim under Section 102 does not need to plead the elements of (or defenses to) a claim under Section 256 affirmatively. Opposition at 6-9. In support of this theory, Plaintiff cites to the Federal Circuit's opinion in *Pannu v. Iolab Corp.*, 155 F.3d at 1344. In *Pannu*, the defendant plead that the patent it was accused of infringing was invalid because it failed to name an inventor. *Id.* at 1347. The plaintiff was granted judgment as a matter of law that patent could not be held invalid because the defendant didn't present evidence that the named inventors acted in bad faith (thus making the patent uncorrectable under Section 256). *Id.* The *Pannu* Court rejected this theory on the basis that "a patent with improper inventorship does not avoid invalidation simply because it might be corrected under section 256." *Id.* at 1350. "Rather, the patentee must claim entitlement to relief under the statute and the court must give the patentee an opportunity to correct the inventorship." *Id.* at 1350. While the burden is on *the patentee* to "claim entitlement to relief" under Section 256, once he has done so, he is entitled to a presumption that he acted in good faith. *Id.*

Defendant cites to cases in which the Federal Circuit required parties to prove that correction was unavailable under Section 256 to invalidate patents. MTD at 11. Two of these cases involved appeals of jury verdicts and post-trial motions and dealt with the sufficiency of evidence of deceptive

---

[2] The AIA also dispensed of Section 256's requirement that only inventors free of deceptive intent could correct non-joinder. *Id.* § 20. This change did not become effective until after this action was initiated. *Id.* Therefore, pre-AIA law applies to Section 256 claims as well.

9

1  intent presented at trial. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1353 (Fed. Cir. 1998); *Acromed
2  Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1374 (Fed. Cir. 2001). These defendants had
3  asserted rights under Section 256 that switched the *evidentiary* burden to the patentees. Thus, their
4  holdings do not guide this Court's analysis of Plaintiff's pleadings under Rule 12. For the same reasons,
5  *Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, a district court case from New Jersey, is also
6  unpersuasive. No. 07-4539, 2010 WL 5392683, at *3 (D.N.J. Dec. 17, 2010). The third Federal Circuit
7  case addressed invalidity from an unrelated perspective, holding that an unnamed inventor must have
8  acted in good faith to substitute his name for another. *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551,
9  1555 (Fed. Cir. 1997) ("[T]he statute allows correction in all misjoinder cases featuring an error and in
10 those nonjoinder cases where the unnamed inventor is free of deceptive intent.").

11         One case cited by Defendant *did* find that a party's failure to allege deceptive intent fatally
12 undermined its invalidity claim at the pleading stage. *U.S. Surgical Corp. v. Origin Medsystems, Inc.*,
13 No. C-92-1892-VRW ENE, 1993 WL 379579, at *7 (N.D. Cal. Jan. 12, 1993), *aff'd without comment*
14 16 F.3d 420 (Fed. Cir. 1993). However, this case was decided five years before *Pannu.* Moreover, the
15 pleading issue was not central to the case. Finally, the holding of *Roche Palo Alto LLC v. Ranbaxy Labs*.
16 *Ltd*, is not applicable to the facts of this case because its holding addressed the narrow issue of whether a
17 certificate of correction has retroactive effect. 551 F. Supp. 2d 349, 359 (D.N.J. 2008).

18         In short, not one of the cases Defendant cites disturbs the *Pannu* Court's holding that "a patent
19 with improper inventorship does not avoid invalidation simply because it might be corrected under
20 section 256." 155 F.3d 1344, 1350. While the *Pannu* Court did not address pleading standards, the two-
21 step approach applied to identifying the evidentiary burden strongly suggests that a Plaintiff must only
22 allege elements of Section 102(f) in order to survive a motion to dismiss. Since Defendant's request to
23 dismiss Plaintiff's 102(f) claims is based entirely on its theory that Plaintiff must plead deceptive intent,
24 the Court DENIES Defendant's request.

25         \

## VI. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss, Doc. 89, as follows:

The Court GRANTS Defendant's motion to dismiss Plaintiff's tenth cause of action without leave to amend. This Court has provided Plaintiff with extensive guidance and multiple opportunities to amend. Further opportunities to amend would be futile.

The Court DENIES Defendant's motion to dismiss claims brought pursuant to 35 U.S.C. § 102(f) (2006).

IT IS SO ORDERED.

Dated: **July 17, 2015**         **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE