# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BECO DAIRY AUTOMATION, Inc.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GLOBAL TECH SYSTEMS, Inc. and DOES 1-50,**<br><br>**Defendants.** | **1:12-cv-01310 LJO SMS**<br><br>**MEMORANDUM DECISION AND ORDER RE: COUNTERDEFENDANT BECO'S MOTION TO DISMISS (Doc. 98)** |
| **GLOBAL TECH SYSTEMS, Inc., A New Mexico Corporation**<br><br>**Counterclaimant,**<br><br>v.<br><br>**BECO DAIRY AUTOMATION, INC., a California Corporation, and STAN BROWN, an individual,**<br><br>**Counterdefendants.** | |

## I. <u>INTRODUCTION</u>

This litigation involves a dispute between Beco Dairy Inc. ("BECO") and Global Tech Systems, Inc. ("GTS") concerning the development and dsitribution of dairy technology.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff and Counterdefendant BECO, based in Hanford, CA, is in the business of producing dairy technology. Answer, Doc. 95, ¶¶ 193-94. BECO's business model is to sell its equipment to dealers who then resell the equipment to end user farms and dairies. *Id.* at ¶ 195. Defendant and

1

1  Counterclaimant GTS is a New Mexico corporation founded in 2001 that produces software and

2  hardware for the dairy industry. *Id.* at ¶¶ 2, 191. Counterdefendant Stan Brown was a founding

3  shareholder of GTS as well as the president of BECO during all times relevant to this cause of action. *Id.*

4  at ¶¶ 23, 196.

5       GTS is the assignee and sole owner of the seven U.S. Patents at issue in this case: Nos.

6  6,604,053 ("'053 Patent"), 6,722,208 ("'208 Patent"), 6,799, 474 ("'474 Patent"), 7,051, 673 ("'673

7  Patent"), 7,063,043 ("'043 Patent"), 7,174,848 ("'848 Patent"), and the 7,841,296 ("'296 Patent"). *Id.* at

8  ¶¶ 68, 197-98. Patents '053, '208, '043 and '474 pertain to milk metering technology ("Milk Meter

9  Patents"). *Id.* at ¶ 199. Patents '673, '848, and '296 pertain to pulsation monitoring technology

10  ("Pulsation Monitoring Patents"). *Id.* at ¶ 200. The products alleged to embody these patents are

11  described in detail. *Id.* at ¶¶ 206-40; 247-49. These products include BECO's ScanNexus milk meters,

12  *id.* at ¶¶ 206-14, Automatic Detacher, *id.* at ¶¶ 215-17, PulsNexus pulsation monitors, *id.* at ¶¶ 218-19,

13  and ParlorScan software, *id.* at ¶¶ 224-33. GTS provided the components for these parts to BECO until

14  around August 2012. *Id.* at ¶ 245.

15       GTS also holds copyrights to computer programs that protect its Parlor Monitoring Software

16  (Copyright No. TX0008059232) and its Parlor Monitoring Software v. 2 (Copyright No.

17  TX0008059231). *Id.* at ¶ 202. These copyrights were filed on July 31, 2015. *Id.*

18       BECO has been GTS's primary customer. *Id.* at ¶ 251. In May of 2005, BECO and GTS entered

19  into an agreement ("Distribution Agreement", Doc. 95, Ex. H) that encompassed the products described

20  above. *Id.* ¶ 39. Under the terms of this agreement, BECO had exclusive marketing rights to the

21  products, in part in return for which it waived interest on monies loaned to GTS. *Id.* The Distribution

22  Agreement contemplated that a new agreement would be negotiated in 2007. *Id.* at ¶ 242. BECO,

23  however, would not re-negotiate the agreement in good faith. *Id.* at ¶ 243. BECO also failed to achieve

24  contractually mandated minimum purchase requirements. *Id.* at ¶ 252. GTS repudiated the agreement in

25  March of 2010, but continued to ship components to BECO for a limited time thereafter. *Id.* at ¶ 49. In

August of 2012, BECO stopped purchasing components from GTS and began manufacturing the components themselves. *Id.* at ¶ 252. BECO's activities caused GTS to file for bankruptcy in May 2013. *Id.* at ¶ 256.

### III. PROCEDURAL HISTORY

This litigation was initiated by BECO in Kings County Superior Court on July 10, 2012. Doc. 1. BECO alleged breach of contract and fiduciary duty, fraud, and intentional interference with an economic relationship. *Id.* GTS removed the action to this Court. *Id.* In response to this Court granting Defendant's (first) motion to dismiss, Doc. 14, BECO filed a First Amended Complaint. Doc. 15. GTS answered and counterclaimed against BECO, alleging breach of contract, interference, and misappropriation of intellectual property, and requesting declaratory relief. Doc. 16. On March 11, 2013, BECO filed for stipulated leave to amend its Complaint and leave was granted on March 25, 2013. Doc. 26.

Before BECO could file a second amended complaint, GTS filed for bankruptcy, and on April 24, 2013, an automatic stay issued. Doc. 28. The bankruptcy proceeding was dismissed on October 28, 2013. *In re GTS, Inc.*, 13-11396-T11, Doc. 124 (Bankr. N.M. Oct. 28, 2013). In accordance with the earlier order granting leave to amend, BECO filed its Second Amended Complaint on November 12, 2013. Doc. 30. GTS answered and counterclaimed on November 27, 2013. Doc. 33.

Shortly before the dismissal for the bankruptcy was entered, GTS filed a complaint in the United States District Court for the District of New Mexico against BECO, *Global Tech Systems, Inc., v. Beco Dairy Automation, et al.* 1:13-cv-01006-JAP-KBM, Doc. 1 (D.N.M. Oct. 17, 2003) ("GTS Complaint"). While the GTS Complaint contained similar claims as were put forward in its counterclaims, the GTS Complaint included new claims that BECO infringed on GTS-owned patents. *Id.* The New Mexico Court transferred the case to the Eastern District of California, where it was renumbered as 1:14-cv-00865----SKO ("Case 865"). Shortly thereafter, BECO petitioned to consolidate this (above-captioned) case with Case 865 and requested leave to amend its own Complaint. On December 9, 2014, the Court

1   consolidated the matters into this case. Consolidation Order, Doc 57. The Court granted BECO leave to

2   amend and closed Case 865. *Id.*

3        BECO subsequently field a third, fourth and fifth amended versions of its complaint. Docs. 59,

4   65, & 81. GTS moved to dismiss claims from each, on which the Court has ruled. The operative version

5   is the fifth amended complaint ("FAC") and alleges claims arising under contract law, fraud and patent

6   law. Doc. 81.

7        Defendant filed an answer and several counterclaims on August 3, 2015. "Answer," Doc. 95.

8   The counterclaims added Stan Brown as a counterdefendant. *Id.* Now before the Court is BECO's

9   motion to dismiss Defendant's counterclaims alleging direct, indirect and contributory patent

10  infringement and state tort laws and violations of copyright law and the Digital Millennium Copyright

11  Act ("DMCA"), pursuant to Rule 12(b)(6). Pl.'s Mot. to Dismiss ("MTD"), Doc. 98. BECO also seeks

12  to strike GTS's "additional defenses" pursuant to Rule 12(f). *Id.* Alternatively, BECO seeks a more

13  definite statement pursuant to Rule 12(e). *Id.* GTS filed an opposition on September 8, 2015. Opp'n of

14  Def. GTS ("Opposition"), Doc. 103. BECO timely replied, "Reply", Doc. 104. A hearing was set for

15  September 22, 2015, but taken off calendar pursuant to L.R. 230(g). Doc. 105.

16                      **IV. <u>STANDARD OF DECISION</u>**

17  **A.      <u>12(b)(6) Legal Standard</u>**

18        A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

19  allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a

20  cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

21  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

22  for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes

23  the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the

24  pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

25        To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim

4

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the Complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim.

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.      12(f) Legal Standard**

Federal Rule of Civil Procedure 12(f) provides that a court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.... Impertinent' matter consists of statements that do not pertain, and are not

1  necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993)

2  (citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL

3  2d, § 1382, pp. 706–07, 711 (1990)), *rev'd. on other grounds*, 510 U.S. 517 (1994). "Redundant"

4  allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action.

5  *Gilbert v. Eli Lilly Co*., Inc., 56 F.R.D. 116, 121, n. 4 (D.P.R.1972). Immaterial matter "is that which has

6  no essential or important relationship to the claim for relief or the defenses being pleaded." *California*

7  *Dept. of Toxic Substance Control v. ALCO Pacific, Inc.,* 217 F.Supp.2d 1028, 1032 (C.D.Cal.2002)

8  (internal citations and quotations omitted). Impertinent material "consists of statements that do not

9  pertain, or are not necessary to the issues in question." *Id.* The purpose of a Rule 12(f) motion is to avoid

10  the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *See*

11  *Fogerty*, 984 F.2d at 1527; *Sidney–Vinstein v. A .H. Robins Co*., 697 F.2d 880, 885 (9th Cir.1983).

12  **C.     12(e) Legal Standard**

13        Rule 12(e) states that "[a] party may move for a more definite statement of a pleading to which a

14  responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably

15  prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) is designed to strike at unintelligibility, rather

16  than want of detail." *Young v. Mandeville*, No. CIV S-01-2360 LKK GG, 2006 WL 2475343, at *2

17  (E.D. Cal. Aug. 28, 2006) (quoting *Woods v. Reno Commodities, Inc*., 600 F.Supp. 574, 580

18  (D.Nev.1984)). Rule 12(e) permits a party to move for a more definite statement "[i]f a pleading is so

19  vague that a party cannot reasonably be required to frame a responsive pleading." *Nelson v. Quimby*

20  *Island Reclamation Dist*., 491 F.Supp. 1364, 1385 (N.D.Cal.1980). The function of such a motion is thus

21  not to require the pleader to disclose details of the case, *Boxall v. Sequoia Union High School Dist*., 464

22  F.Supp. 1104, 1114 (N.D.Cal.1979), nor to provide the evidentiary material that may properly be

23  obtained by discovery. *Famolare, Inc. v. Edison Bros. Stores, Inc*., 525 F.Supp. 940, 949 (E.D.

24  Cal.1981). A motion for more definite statement should be denied if a pleading meets federal standards

25  by providing a "short and plain statement" of the claim showing that the pleader is entitled to relief. *See*

Fed. R. Civ. P. 8(a)(2).

# V. ANALYSIS

## A.   Direct Infringement Counterclaims

GTS alleges that BECO directly infringes on the seven patents in issue in violation of 35 U.S.C. § 271(a). Answer ¶¶ 408, 449, 490, 531, 571, 611, & 651. Section 271(a) provides that "[e]xcept as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent. As discussed in the Court's March 3, 2015 Order, Doc. 64, the plausibility of a claim for direct patent infringement is measured against the specificity required by Form 18 (the model form for such claims appended to the Federal Rules of Civil Procedure). *In re Bill of Lading Transmission & Processing Sys. Patent Litig*., 681 F.3d 1323, 1334 (Fed. Cir. 2012). Form 18 describes the hypothetical product at issue as being an "electric motor" and the infringing acts as "making, selling, and using electric motors that embody the patented invention." Fed. R. Civ. P. Form 18. Form 18 also requires that a plaintiff include (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that the plaintiff has given the defendant notice of its infringement; and (4) a demand for an injunction and damages. ). *In re Bill of Lading,* 681 F.3d at 1334. Form 18 does not require a party to describe the infringing activities in detail, especially where the extent of infringement is not ascertainable prior to discovery:

> We do not read Form 18—or [*Bill of Lading]*—to require that a plaintiff identify an accused device by name. That [Plaintiff] cannot point to the specific device or product within [Defendants'] systems that translates the digital television signals each receives—especially when the operation of those systems is not ascertainable without discovery—should not bar [Plaintiff's] filing of a complaint.

*K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1286 (Fed. Cir. 2013).

BECO first argues that GTS's claims fail because GTS does not provide proper notice of which

products or "combinations of components" are accused of direct infringement. MTD at 5-10. In support of this argument, BECO cites to *Prism Technologies, LLC v. AT&T Mobility, LLC,* No. 8:12CV122, 2012 WL 3867971, at *5 (D. Neb. Sept. 6, 2012), for its holding that overly broad descriptions of infringing activities do not conform with Form 18. *Id.* The *Prism Techonologies* plaintiff alleged infringement against defendant's "various wireless products and data services" and the court found that description to "be considerably more generic" than Form 18's example of an electric motor. *Id.* On this basis it held the plaintiff's allegation "is so vague that it encompasses essentially [defendant]'s entire business, leaving [defendant] with no notice as to how it allegedly infringes." *Id.*

Here, GTS alleges that BECO's milk meters, pulsation monitors, milk metering systems, and pulsation monitoring systems infringe on the seven patents-in-suit. Opposition at 3 (citing Answer ¶¶ 408, 449, 490, 531, 571, 611, & 651). GTS describes these products in detail in a section called "The Products at Issue." Answer ¶¶ 206-233. GTS alleges that BECO began copying components of these products in 2012. *Id.* at ¶¶ 304-306. Specifically, GTS describes that BECO copied the electronic boards and inner tubes of its milk meters and ScanNexus products. *Id.* at ¶¶ 312, 321. GTS also alleges that BECO copied the electronics board and firmware of its automatic detacher units, pulsation monitoring electronics, and USB dongles. *Id.* at ¶¶ 327-329, 335-341, 358-360. GTS alleges that BECO then sold these products to domestic and foreign customers. *Id.* at ¶¶ 367, 386. GTS alleges that the copy and sale of these products directly infringes on the patents in suit. *See, e.g. id.* at ¶ 412 ("BECO further directly infringed on one or more claims of the '053 patent by testing its Milk Meters and Milk Meter Systems in the United States before selling them to domestic end users such as Avila Dairy Equipment for installation at Delta View Farms."). These allegations are a good deal more specific than those rejected by the *Prism Technologies* Court, and are at least as specific as the model "electric motor" identified in Form 18.

BECO also alleges that GTS does not adequately identify the patents in suit because it does not identify the claims at issue. MTD at 7. However, the Federal Circuit has made clear that "a plaintiff need

1   not even identify which claims it asserts are being infringed." *In re Bill of Lading Transmission*, 681

2   F.3d at 1335.

3       BECO further claims that GTS failed to allege specific infringing activities. MTD at 4-5. As

4   BECO acknowledges, GTS alleges that BECO tested and sold some of the products at issue in the

5   Ukraine, in Saudi Arabia, and domestically. MTD (citing Answer ¶¶ 295, 368, 376). The parties agree

6   that testing may constitute a "use" as the term is employed in Section 271. MTD at 9, n. 6; Opposition at

7   4, n. 2. BECO however, argues that the testing GTS alleges is not actionable because it amounts to the

8   testing of "unassembled components of a system." MTD at 10. In support of this argument, BECO cites

9   to *Waymark Corp. v. Porta Sys. Corp*., 245 F.3d 1364, 1366 (Fed. Cir. 2001). In *Waymark*, the Federal

10  Circuit found, at summary judgment, that a defendant did not infringe where it only tested individual

11  components of a patented system. *Id.* Here, however, GTS has alleged that systems and products tested

12  independently infringed on the patents in suit. *See, e.g.,* Answer ¶ 412 ("BECO further directly infringed

13  one or more claims of the '053 Patent by testing its Milk Meters and Milk Meter Systems in the United

14  States . . ."). Thus, the holding in *Waymark* does not apply to facts alleged in this case.

15      For all of the above reasons, the Court finds that GTS's allegations meet or exceed the

16  requirements of Form 18. Therefore, they satisfy the pleading standards that govern these claims. *See K-*

17  *Tech Telecommunications, Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1286-87 (Fed. Cir. 2013)

18  Therefore, the Court DENIES BECO's requests to dismiss GTS's direct infringement claims.

19  Additionally, the Court does not find that GTS's direct infringement claims are so "vague or

20  ambiguous" that that they will prevent BECO from being able to prepare a response. Fed. R. Civ. P.

21  12(e). Thus, BECO's motion for a more definite statement is DENIED as to these claims.

22  **B.      Indirect Infringement**

23      GTS alleges that BECO indirectly infringes on the seven of its patents in suit pursuant to 35

24  U.S.C. § 271(b). Answer ¶¶ 416, 457, 498, 538, 578, 618, & 658. Subsection 271(b) provides that

25  "[w]hoever actively induces infringement of a patent shall be liable as an infringer." "In order to

1  succeed on a claim of inducement, the patentee must show, first that there has been direct infringement,

2  and second that the alleged infringer knowingly induced infringement and possessed specific intent to

3  encourage another's infringement." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-

4  05 (Fed. Cir. 2002) (internal citations omitted). Accordingly, to survive a motion to dismiss under Rule

5  12(b)(6), a pleading must contain facts plausibly showing that a party specifically intended a third party

6  to infringe on a patent and knew that the third party's acts constituted infringement. *In re Bill of Lading*,

7  681 F.3d at 1339.

8      GTS alleges dairy technology dealers Avila and ADS directly infringe on the patents at issue

9  "when they test BECO's milk meters and Milk Meter Systems in conjunction with their installation of

10  the Milk Meters and the Milk Meter Systems at end user facilities" and when they "make, test, offer for

11  sale, and sell BECO's Pulsation Monitors and Pulsation Monitoring Systems . . ." Answer ¶¶ 417, 458,

12  499, 539, 579, 619 & 659. GTS also alleges that "end users," (the dealers' ultimate customers), such as

13  Delta View Farms directly infringe on the patents-at-issue when they use the infringing products sold to

14  them by dealers. Answer ¶¶ 418, 459, 500, 540, 580, 620 & 660. BECO claims that these allegations fail

15  because they are conclusory and because GTS does not describe the offending products in enough detail.

16  Opposition at 12. This Court disagrees. As discussed above, GTS goes into fine detail as to the identity

17  of the infringing products in a section. Answer ¶¶ 206-233. Similarly, GTS goes into great detail about

18  the allegedly infringing acts of the dealers and end users in paragraphs 287-294 of its Answer.

19      BECO counters that many of the alleged infringing acts occurred during a time frame when the

20  parties were on good terms, stating that "GTS never alleges facts that plausibly establish that the third-

21  parties in question committed the infringing acts after BECO and GTS terminated business relations . .

22  ." Opposition at 13. This argument fails for two reasons. First, while the argument presents a potential

23  defense to GTS's allegations, it is not a reason to dismiss its claims. At the pleading stage, GTS does not

24  need to prove its case. *In re Bill of Lading*, 681 F.3d at 1339 (quoting *Skinner v. Switzer*, 562 U.S. 521,

25  529 (2011) (holding that at the question "is not whether [a party] will ultimately prevail on his

1   procedural due process claim, but whether his complaint was sufficient to cross the federal court's

2   threshold."). Second, as GTS points out, GTS actually limited its allegations to the years 2013 and 2014,

3   Answer ¶ 375, which is after relations between the companies soured in 2012, *id.* at ¶ 252. For these

4   reasons, the Court concludes that the facts alleged by GTS raise plausible claims that the dairy

5   technology dealers and end users infringed on the patents at issue.

6        BECO also alleges that GTS fails to allege that BECO acted with specific intent. Opposition at

7   14. As GTS points out, it has alleged that BECO had knowledge of the patents at issue in several places.

8   Opposition at 9-11. It alleged that BECO's president, Stan Brown, is a named inventor on six of the

9   seven patents-at-issue, that BECO's patent attorney prosecuted the patents, and that BECO personnel

10  were aware that GTS filed for and eventually obtained all the patents. Answer ¶¶ 389-93. GTS also

11  points out that the parties entered into a contract which clarified that GTS held patents on several of the

12  products in dispute. *Id.* ¶ 394; *see also* Answer Ex. H, Doc. 95-9. GTS alleges that it sent BECO a draft

13  agreement in 2011 that identified BECO products that incorporated GTS patent holdings. *Id.* at ¶¶ 396-

14  400. GTS goes on to explain that it informed BECO that it needed permission to use its intellectual

15  property; but that BECO ignored these warnings, copied GTS technology and sold them to dealers and

16  end-users. *Id.* at ¶¶ 401-405. Finally, GTS describes that it alleged infringement claims against BECO in

17  their 2012 counterclaims. *Id.* at ¶ 403.

18       BECO argues that these allegations are not "credible" because it may have purchased the

19  products at issue in conformity with a pre-existing agreement. MTD at 14. As was the case above, this

20  argument is premature. "In assessing whether it is reasonable to infer intent from statements or conduct .

21  . . a court must assess the facts in the context in which they occurred and from the standpoint of the

22  speakers and listeners within that context*." In re Bill of Lading*, 681 F.3d at 1340 (Fed. Cir. 2012)

23  (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324-25 (2011)). In reading the

24  allegations within the context of GTS's pleadings, the Court finds that GTS plausibly alleged that BECO

25  knew of GTS's patent holdings, but went on to copy and distribute products that embodied the patents

1   when the parties' relationship failed. Because GTS also alleges that BECO induced dealers and end

2   users to use and sell these infringing products, it has alleged plausible claims pursuant to 35 U.S.C. §

3   271(b). Therefore, the Court DENIES BECO's requests to dismiss GTS's indirect infringement claims.

4   Additionally, the Court does not find that GTS's indirect infringement claims are so "vague or

5   ambiguous" that that they will prevent BECO from being able to prepare a response. Fed. R. Civ. P.

6   12(e). Thus, BECO's motion for a more definite statement is DENIED as to these claims.

7   **C.**     **Contributory Infringement Counterclaims**

8        GTS alleges that BECO contributes to the infringement of the seven of its patents pursuant to 35

9   U.S.C. § 271(c). Answer ¶¶ 426, 467, 508, 548, 588, 628, & 667. Subsection 271(c) provides that:

10             [w]hoever offers to sell or sells within the United States or imports into
               the United States a component of a patented machine, manufacture,
11             combination or composition, or a material or apparatus for use in
               practicing a patented process, constituting a material part of the invention,
12             knowing the same to be especially made or especially adapted for use in
               an infringement of such patent, and not a staple article or commodity of
13             commerce suitable for substantial noninfringing use, shall be liable as a
               contributory infringer.

14

15        "In order to succeed on a claim of contributory infringement, in addition to proving an act of

16   direct infringement, plaintiff must show that defendant 'knew that the combination for which its

17   components were especially made was both patented and infringing' and that defendant's components

18   have 'no substantial non-infringing uses.'" *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc*.,

19   424 F.3d 1293, 1312 (Fed. Cir. 2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co*., 365 F.3d

20   1054, 1061 (Fed.Cir.2004)). Thus, to survive a motion to dismiss a plaintiff must plead facts that "allow

21   an inference that the components sold or offered for sale have no substantial non-infringing uses." *In re*

22   *Bill of Lading*, 681 F.3d at 1337.

23        BECO argues that this claim should be dismissed for two reasons. First, BECO argues that GTS

24   does not allege facts inferring that third parties actually infringed its patents. This argument refers back

25   and mirrors its argument regarding the indirect infringement claims. MTD at 15-16. As discussed above,

this Court finds that GTS adequately alleges dairy technology dealers and end users directly infringe on patents by testing, using and selling infringing products. *See* Answer ¶¶ 417-18, 458-59, 499-500, 539-40, 579-80, 619-20 & 659-660. These allegations also support claims of contributory infringement.

BECO also argues that GTS does not identify which components are the subject of this claim. MTD at 16. At the same time, however, BECO acknowledges that "GTS alleges that BECO copied some parts of the patented devices (including various electronics boards, tubes, and a USB dongle)." *Id.* It is clear to this Court that these components, described in great detail in paragraphs 302-363, are the ones at issue. Because GTS also alleges that the BECO sold these parts to third parties and that these parts have no substantial non-infringing uses, Answer ¶¶ 431-34, 471- 75, 512-16, 552-56, 592-96, 632-36, & 671-75, it has plead viable claims for contributory infringement. Therefore, the Court DENIES BECO's requests to dismiss GTS's contributory infringement claims. Additionally, the Court does not find that GTS's contributory infringement claims are so "vague or ambiguous" that that they will prevent BECO from being able to prepare a response. Fed. R. Civ. P. 12(e). Thus, Plaintiff's motion for a more definite statement is DENIED as to these claims.

**D.     Copyright Infringement**

GTS alleges that Stan Brown and BECO infringe on GTS's copyrighted Parlor Monitoring Software, pursuant to 17 U.S.C. § 501. Answer ¶¶ 692-96, 705-712. "Copyright infringement claims have two basic elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In the ordinary infringement case, as here, "the dispute centers on the second prong—whether, for example, the copying was a 'fair use,' or whether the materials taken were 'original.'" *Id.* BECO does not dispute that GTS alleged that it holds valid copyrights to the two versions of the Parlor Monitoring Software. *See also* Answer ¶¶ 692-93, 708.

BECO argues that GTS's claim fails because it "does not provide any information regarding the

1   actual expression that it alleges is subject to copyright expression." MTD at 17. In other words, it claims

2   that GTS must identify the actual language that it claims is protected. *Id.* at 18. BECO, however,

3   provides *no authority* for its theory that a copyright plaintiff must produce the precise language that is

4   the subject of its claim in the context of its pleading. Rather, most courts in the Ninth Circuit hold that a

5   valid copyright infringement claim "must allege only the basic elements of infringement." *See Basevi,*

6   *Inc. v. Acorn Co.*, No. CV 08-7145AHMJTLX, 2009 WL 764532, at *4 (C.D. Cal. Mar. 19, 2009)

7   (collecting cases). In the context of software claims, courts have found viable copyright claims require

8   that a plaintiff has shown both that the defendant had "access to the copyrighted work and that there

9   exists a substantial similarity of both the general ideas and expression between the copyrighted work and

10  the allegedly infringing work." *Id. See Operational Risk Mgmt. LLC v. Union Bank, N.A.*, No. C 12-

11  0584 SI, 2012 WL 1710893, at *2 (N.D. Cal. May 15, 2012) (quoting *Apple Computer, Inc. v. Microsoft*

12  *Corp.*, 35 F.3d 1435, 1441 (9th Cir. 1994)). For example, the Northern District recently allowed a

13  copyright violation claim to proceed where the plaintiff provided the copyright number of the software

14  at issue and "described several methods by which it believes Defendants have obtained and improperly

15  resold [plaintiff's] software products." *Adobe Sys. Inc. v. My Choice Software*, LLC, No. 14-CV-02150-

16  BLF, 2014 WL 6346776, at *3 (N.D. Cal. Nov. 14, 2014) (noting that "[t]he fact that the precise scope

17  of Defendants' misconduct (if any) remains to be fleshed out in discovery does not render the FAC

18  inadequate."). Here, GTS provides a copyright number for the two products at issue and describes, in

19  detail, how BECO broke through the encryption technology protecting its software, copied  the software

20  and improperly resold the products. Answer ¶¶ 693-718. These allegations, if true, would allow a jury to

21  find that the software BECO sold was more than substantially similar to the software protected by

22  copyright. Thus, they are sufficient to survive a motion to dismiss. For these reasons, the Court DENIES

23  BECO's requests to dismiss GTS's copyright infringement claims. Additionally, the Court does not find

24  that GTS's copyright claims are so "vague or ambiguous" that that they will prevent BECO from being

25  able to prepare a response. Fed. R. Civ. P. 12(e). Thus, Plaintiff's motion for a more definite statement is

1    DENIED as to these claims.

2    **E.      DMCA Claims**

3          GTS alleges BECO and Stan Brown provided third parties with tools to circumvent GTS's

4    cybersecurity measures, in violation of the DMCA, 17 U.S.C. § 1201. Answer ¶¶ 721-725. The Ninth

5    Circuit treats the DMCA as creating two general types of claims:

6          First, § 1201(a) prohibits the circumvention[1] of any technological measure
           that effectively controls access to a protected work and grants copyright

7          owners the right to enforce that prohibition. . . . Second, and in contrast to
           § 1201(a), § 1201(b)(1) prohibits trafficking in technologies that

8          circumvent technological measures that effectively protect 'a right of a
           copyright owner.' Section 1201(b)(1)'s prohibition is thus aimed at

9          circumventions of measures that protect the copyright itself: it entitles
           copyright owners to protect their existing exclusive rights under the

10         Copyright Act. Those exclusive rights are reproduction, distribution,
           public performance, public display, and creation of derivative works. 17

11         U.S.C. § 106.

12   *MDY Indus., LLC v. Blizzard Entm't, Inc.,* 629 F.3d 928, 944 (9th Cir. 2010)*, as amended on denial of*

13   *reh'g* (Feb. 17, 2011).

14         Section 1201(a) claims are further split into claims preventing the circumvention itself (§

15   1201(a)(1)), and claims prohibiting "trafficking in devices that facilitate circumvention of access control

16   measures." (§ 1201(a)(2)). *MDY Indus.*, 629 F.3d at 946. For example, it would violate § 1201(a)(2) to

17   "defeat or bypass the password of [a copyrighted work] and to make the means to do so . . .This is

18   roughly analogous to making it illegal to break into a house using a tool, the primary purpose of which is

19   to break into houses." *Id.* (quoting S. Rep. No. 105–190, at 12 (1998)). In other words, "section (a)

20   creates a new anticircumvention right distinct from copyright infringement, while section (b) strengthens

21   the traditional prohibition against copyright infringement." *Id.* at 947. Accordingly, the Ninth Circuit

22   holds that § 1201(a) claims do not require a plaintiff to show that circumvention is tied to activities that

23

24   _____

25   [1] "Circumvention" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

1    actually infringe on a copyright holder's protected rights. *Id.* at 952 ("In sum, we conclude that a fair

2    reading of the statute (supported by legislative history) indicates that Congress created a distinct anti-

3    circumvention right under § 1201(a) without an infringement nexus requirement.").

4         BECO first argues that GTS's claim is not viable because GTS does not identify how BECO's

5    activities affected GTS's copyrights because of case law from the Federal Circuit. MTD at 19 (quoting

6    *Chamberlain Grp., Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004)). The Ninth

7    Circuit, however, has explicitly rejected this approach. *MDY Indus.,* 629 F.3d at 950 ("While we

8    appreciate the policy considerations expressed by the Federal Circuit in *Chamberlain*, we are unable to

9    follow its approach because it is contrary to the plain language of the statute."). This Court is bound to

10   follow the case law of the Ninth Circuit in this matter. Moreover, GTS *did* allege that BECO's

11   circumvention infringed on its copyrights when BECO engineered pirated software keys to GTS's

12   technology and sold these keys to third parties. Answer ¶¶ 356-57.

13        BECO next argues that the DMCA claims fail because they do not specify when the alleged

14   circumvention took place. MTD at 19. BECO maintains that this omission is fatal because the

15   circumventions may have occurred at a time when BECO had legitimate access to GTS's software. *Id.* at

16   20. This argument asserts a defense rather than pleading defect; therefore it is premature. At the pleading

17   stage, a plaintiff must only set forth its claims; not refute all possible defenses. *Rivera v. Peri & Sons*

18   *Farms, Inc*., 735 F.3d 892, 902 (9th Cir. 2013). Only if the substance of an affirmative defense is

19   "obvious on the face of a complaint," can it support a 12(b)(6) motion. *Id.* Here, GTS clearly alleges that

20   BECO did not have the authority to circumvent its software key and that its use and trafficking of

21   software stemming from this circumvention was illegitimate. Answer ¶¶ 348-57. Thus, this is not a

22   situation where the pleading itself can be read as invoking the defense. The facts alleged support viable

23   claims under the DMCA. For these reasons, the Court DENIES BECO's requests to dismiss GTS's

24   DMCA claims. Additionally, the Court does not find that GTS's DMCA claims are so "vague or

25   ambiguous" that that they will prevent BECO from being able to prepare a response. Fed. R. Civ. P.

1    12(e). Thus, BECO's motion for a more definite statement is DENIED as to these claims.

2    **F.    Misappropriation of Trade Secret Claims**

3    GTS alleges that Stan Brown and BECO misappropriated GTS's trade secret software keys and

4    that these activities resulted in actual loss to GTS and unjust enrichment to BECO. Answer ¶¶ 731, 740.

5    GTS clarifies in its Opposition that these claims arise under the California's Uniform Trade Secret Act

6    ("UTSA"), Cal. Civ. Code §§ 3426-3426.11. The elements of a claim of trade secret misappropriation

7    under UTSA are as follows: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed,

8    or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the

9    plaintiff." *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003). "'Improper means'

10   includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain

11   secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation

12   alone shall not be considered improper means." Cal. Civ. Code § 3426.1(a).

13   BECO characterizes the allegations as describing that BECO obtained valid software keys and

14   then reverse engineered them. MTD at 22. BECO argues that GTS' UTSA claims fail because, under

15   UTSA, reverse engineering "alone" is not improper. MTD at 21-22. GTS responds that BECO only had

16   access to enough software keys to make reverse engineering possible because of its special contractual

17   relationship. Opposition at 18 (citing Answer ¶ 736). Therefore, BECO's actions are improper because

18   they constitute *more* than reverse engineering alone. *Id.*

19   The California Supreme Court has suggested in dicta that reverse engineering is only a proper

20   way to acquire trade secret information when it is accomplished "by a fair and honest means, such as

21   purchase of the item on the open market . . ." *DVD Copy Control Ass'n, Inc. v. Bunner ("Bunner")*, 31

22   Cal. 4th 864, 901 n. 5 (2003), as modified (Oct. 15, 2003) (internal quotations omitted). This position

23   finds context in the "well recognized" concept "that a trade secret does not offer protection against

24   discovery by fair and honest means such as by independent invention, accidental disclosure or by so-

25   called reverse engineering, that is, starting with the known product and working backward to divine the

process." *Sinclair v. Aquarius Electronics, Inc.*, 42 Cal. App. 3d 216, 226 (1974). Thus, while the *Bunner* court's observation is not binding, it is a logical reading of the law that when something is on the open market, it is fair game (at least under USTA) for third parties to reverse engineer it.

Here, GTS alleged that its software keys were not available to the public and were only available to BECO pursuant to their contractual relationship. Answer ¶ 733. ("GTS maintained both its Software Keys and the process by which it generated new software keys in its Encryption Software as trade secrets. GTS only provided Software Keys . . .to BECO for legitimate installations."). GTS also claims that BECO was obligated to keep the Software Keys confidential. *Id.* at ¶ 734 ("BECO and Mr. Brown . . .were required to maintain the confidentiality of the Software Keys . . ."). BECO does not dispute that the software keys were not available to the public, but argues that they did not agree to keep the keys confidential. MTD at 22-23. The language at issue is contained in the 2005 Distribution Agreement, Answer Ex. H. It is contained in a section titled, "Property Rights," and reads as follows: "GTS owns all rights (patents, intellectual property, etc.) for all products in this agreement. BECO can't reproduce, copy or distribute any hardware or software involved for all products without explicit GTS authorization. BECO can't sell devices that are directly competitive with the ones described in this agreement." Answer Ex. H, 4. The Court agrees that the language in the Distribution Agreement does not clearly invoke confidentiality. However, it does explicitly state that BECO will not "copy or distribute *any* hardware or software *involved for all products*." *Id.* (emphasis added). The activities GTS is accused of –reverse engineering and distribution of counterfeit software keys- can reasonably be construed as violations of this obligation. This is sufficient for the Court to draw the reasonable inference that BECO obtained the technology through improper means, *Iqbal*, 556 U.S. at 678, as opposed to through "reverse engineering . . . alone." Cal. Civ. Code § 3426.1(a). For these reasons, the Court DENIES BECO's request to dismiss GTS's UTSA claims. Additionally, the Court does not find that GTS's UTSA claims are so "vague or ambiguous" that that they will prevent BECO from being able to prepare a response. Fed. R. Civ. P. 12(e). Thus, BECO's motion for a more definite statement is

1    DENIED as to these claims.

2    **G.    Breach of Fiduciary Duty Claim**

3    GTS alleges that Stan Brown had a fiduciary duty to GTS and he breached this duty by causing

4    BECO to breach its contractual obligations and deal unfairly with GTS. Answer ¶¶ 754-55. GTS alleges

5    that BECO is also liable because it directly participated in these activities. *Id.* at ¶ 757. Under California

6    law, the elements of aiding or abetting the breach of a third party's fiduciary duty are that the accused

7    "knows the other's conduct constitutes a breach of duty and gives substantial assistance or

8    encouragement to the other to so act." *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir.

9    2006) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)). "[T]o satisfy the

10   knowledge prong, the defendant must have 'actual knowledge of the specific primary wrong the

11   defendant substantially assisted.'" *Id.* Thus, "in order to analyze the sufficiency of a claim for aiding and

12   abetting breach of fiduciary duty," a court must first "identify precisely the breach of fiduciary duty for

13   which [a claimant] seeks to hold [a defendant] liable." *Casey,* 127 Cal. App. 4th at 1144 (internal

14   quotations omitted).

15   GTS alleges that Brown's fiduciary duty arises out of his status as a shareholder and director of

16   GTS, a closely held corporation. Answer ¶ 754. GTS alleges that Brown breached this duty while acting

17   in his capacity as president of BECO, by refusing to sell contractually-mandated minimum quantities of

18   products, refusing to renegotiate the Distribution Agreement, selling products outside contractually

19   defined geographic areas, misrepresenting BECO's authority, engaging in unauthorized sales of GTS

20   products, and misappropriating GTS software keys. *Id.* at ¶¶ 755-56. GTS, however, fails to allege that

21   Brown *knew* that he had a fiduciary duty to GTS. Such knowledge may not be necessary to prove that

22   the duty in fact existed. However, it is essential to a claim of aiding and abetting. As BECO correctly

23   points out, the only tortious actions alleged which could be imputed to BECO were performed by

24   Brown. If he did not have knowledge of the duty, then neither could it. For these reasons, the Court

25   GRANTS BECO's motion to dismiss GTS's breach of fiduciary duty claim as to BECO, with leave to

1  amend.

2  **H.     Sufficiency of "Additional Defenses"**

3         In addition to other defenses asserted, GTS alleges the following "additional" defenses: that

4  BECO's amended complaint fails to state a claim upon which relief can be granted and that BECO's

5  claims are barred "in whole or in part by the doctrines of laches, unclean hands, waiver, and/or

6  estoppel." Answer ¶¶ 181-82. GTS also "gives notice that it intends to rely on such other and further

7  affirmative defenses as may become available during discovery in this action and reserves the right to

8  amend its answer any such defenses." Answer ¶ 183. BECO moves to Court to strike these defenses on

9  the basis that they are affirmative defenses and do not provide BECO with fair notice. MTD at 24-25.

10        This Court has previously required parties asserting affirmative defenses to comply with the

11  *Twombly/Iqbal* pleading standard. *See Johnson v. Golden Empire Transit Dist*., No. 1:14-CV-001841

12  LJO, 2015 WL 1541285, at *2-3 (E.D. Cal. Apr. 7, 2015). One reason for this is that affirmative

13  defenses are held to the same standard as complaints under Rule 8. *Id.* (*quoting Barnes v. AT & T*

14  *Pension Ben. Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010)). Further,

15  "[b]ecause a defendant bears the burden of proof on its affirmative defense just as a plaintiff does on its

16  claim, *Twombly 's* conception of fair notice would seem to apply equally to both." *Vogel v. Huntington*

17  *Oaks Delaware Partners*, LLC, 291 F.R.D. 438, 441 (C.D. Cal. 2013). However, as GTS points out, a

18  recent Ninth Circuit panel decision overruled this approach, holding that an affirmative defense need

19  only give "fair notice . . .describing the defense in general terms." *Kohler v. Flava Enterprises, Inc*., 779

20  F.3d 1016, 1019 (9th Cir. 2015); *see also Aubin Indus., Inc. v. Caster Concepts, Inc*., No. 2:14-CV-

21  02082-MCE, 2015 WL 3914000, at *5 (E.D. Cal. June 25, 2015) (discussing circuit split that existed

22  prior to *Kohler* on this issue). Accordingly, this Court now applies the "fair notice" standard, and not the

23  heightened pleading standard announced in *Twombly* and *Iqbal*, when evaluating motions to strike

24

25

1   affirmative defenses.[2]

### 1.   First Additional Defense

3   GTS's first "additional" defense is that BECO's complaint fails to state a claim upon which

4   relief can be granted. Answer ¶ 181. This defense fails because it is overbroad and cannot possibly give

5   fair notice. BECO's operative complaint raises twelve causes of action, of which eleven are still viable.

6   Doc. 94. Thus, it is unclear to which claim GTS is referring.[3] The Court GRANTS BECO's motion to

7   strike this defense as it is clearly insufficient as a matter of pleading. GTS is granted leave to amend.

### 2.   Second Additional Defense

9   GTS's second "additional defense" is that "BECO's claims are barred in whole or in part by the

10   doctrines of laches, unclean hands, waiver, and/or estoppel." Answer ¶ 181. GTS cites to a decision by

11   another court in the Eastern District, which found that affirmative defenses such as these meet the "fair

12   notice" standard when they comply with Rule 8(c)'s directive to "affirmatively state" the existence of

13   the defense. *Dodson v. Gold Cnty. Foods, Inc*., No. 2:13-CV-0336-TLN-DAD, 2013 WL 5970410, at *3

14   (E.D. Cal. Nov. 4, 2013). On some occasions, a simple affirmative statement may provide fair notice.

15   *See Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (finding statement invoking statute of

16   limitations sufficiently plead where attached memo provided the appropriate statutory authority).

17   However, as the Ninth Circuit recently confirmed, the touchstone of the analysis under Rule 8(c) is fair

18   notice; not the existence of an affirmative statement. *Kohler,* 779 F.3d at 1019; *see also Wyshack*, 607 F.

19   2d at 827. Thus, the Court finds this standard applies governs the affirmative defense of laches, unclean

20   hands, waiver, and estoppel.

21   Here GTS asserts these defenses only by reference and without any explanation as to how they

22

23   [2] As have at least two other courts in this district. *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc*., No. 2:15-CV-00861-KJM, 2015 WL 5436784, at *12 (E.D. Cal. Sept. 15, 2015); *Edwards v. Cnty. of Modoc*, No. 2:14-CV-02646-MCE, 2015

24   WL 4456180, at *1 (E.D. Cal. July 20, 2015).

25   [3] The Court also notes that is has previously ruled on four occasions as to the sufficiency of BECO's claims. Docs. 14, 64, 80, & 94. To the extent that GTS would ask the Court to reconsider these decisions, that time period has passed.

1    relate to the case at bar. As BECO points out, such shotgun pleadings generally do not provide fair

2    notice. *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) ("A reference to a

3    doctrine, like a reference to statutory provisions, is insufficient notice."). This is especially true in the

4    context of such a lengthy and complicated pleading. While GTS relates these claims to other factual

5    assertions in its Opposition, at 22, these relationships are far from apparent on the face of its pleadings.

6    Therefore, the Court GRANTS Plaintiff's motion to strike GTS's second additional defense as it is

7    clearly insufficient as a matter of pleading. GTS is granted leave to amend.

8         **3.      Other Reservations of Right**

9         BECO also moves to strike sentences where GTS attempts to "reserve" its right to allege

10   additional defenses. MTD at 25 (quoting Answer ¶¶ 180, 183). As BECO points out, GTS's ability to

11   amend its pleadings is subject to the constraints of Rule 15. *Id.* This Court does not read paragraphs 180

12   and 183 as suggesting that Rule 15 does not apply. Rather, they merely give notice that GTS is

13   contemplating these defenses. While the Court does not see the practical value of such statements, it

14   does not see the harm in them either. Thus they are not "insufficient defense[s]" nor "redundant,

15   immaterial, impertinent, or scandalous matter[s]." Fed. R. Civ. P. 12(f). Therefore, the Court DENIES

16   Plaintiff's request to strike these paragraphs.

17        **VI. CONCLUSION AND ORDER**

18        For the reasons discussed above, the Court GRANTS IN PART AND DENIES IN PART

19   BECO's motion to dismiss, Doc. 98, as follows:

20        The Court GRANTS BECO's motion to dismiss GTS's claim that BECO is liable for breach of

21   fiduciary duty, under California state law. GTS is granted leave to amend this claim.

22        The Court GRANTS BECO's motion to strike GTS' first and second additional defenses,

23   Answer ¶¶ 181-182. GTS is granted leave to amend these statements.

24        The Court DENIES BECO's request to dismiss or to strike the remaining counterclaims and

25   additional defenses. The Court also DENIES BECO's request for a more definite statement.

GTS shall file any amended answer and counterclaims within 14 calendar days of this order. No later than 21 days after service of any amended complaint, BECO shall file a response thereto. GTS is cautioned that this will be the last opportunity to amend.

GTS should only amend if amendment will not be futile based on the law and holding in this Order. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

IT IS SO ORDERED.

Dated:   **September 28, 2015**                    **/s/ Lawrence J. O'Neill**
                                                UNITED STATES DISTRICT JUDGE